**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD DOYLE MUSSER,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>        Defendant.<br>_____ | Case No.  1:14-cv-00684-SKO<br><br>**ORDER ON PLAINTIFF'S COMPLAINT**<br><br>(Doc. 17) |

### I. INTRODUCTION

Plaintiff, Richard Doyle Musser ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7, 8.)

## II. FACTUAL BACKGROUND

Plaintiff was born on May 2, 1971, and alleges disability beginning on August 21, 2007. (AR 32; 249; 253; 292.) Plaintiff claims he is disabled due to back injury, lower extremity nerve damage, major depressive like episode, depression, mood disorder, and "multiple conditions." (*See* AR 253.)

### A. Relevant Medical Evidence

On May 8, 2009, Plaintiff attended his first psychotherapeutic visit since a work-site injury in 2007; psychiatric Agreed Medical Examiner Myron L. Nathan evaluated Plaintiff. (AR 679-725.) Plaintiff reported symptoms of anxiety and depression, difficulty with short-term memory, irritability, and anger, but denied any suicidal ideation. (AR 684-85; 699; 700.) Plaintiff reported socializing with friends each week or every two weeks, driving occasionally, and walking daily and sometimes working out on a Nordic Track. (AR 686.)

Plaintiff was not anxious or depressed, and did not exhibit any signs of a thought disorder, hallucinations, or delusions. (AR 687; 697.) Plaintiff was oriented, displayed average intelligence, and had satisfactory judgment. (AR 687-88.) Dr. Nathan diagnosed Plaintiff with depressive disorder, not otherwise specified (AR 696) and recommended Plaintiff see a psychiatrist to receive a prescription for psychotropic medication (AR 700).

Dr. Nathan opined Plaintiff was experiencing a psychiatric disorder as a result of his physical symptomatology but determined that Plaintiff had never been even temporarily totally disabled from a psychiatric standpoint. (AR 700.) Dr. Nathan further opined that from a psychiatric standpoint, there was no reason why Plaintiff could not resume his former work activities without any restrictions or limitations. (AR 701.) Dr. Nathan further cautioned that Plaintiff's "response style [on psychological testing] may indicate a tendency to magnify illness, an inclination to complain, or feelings of extreme vulnerability associated with a current episode of acute turmoil," and that his "scale scores may be somewhat exaggerated, and the interpretations should be read with this in mind." (AR 691.)

On December 9, 2010, psychologist Banafshe P. Ardebili, Ph.D., examined Plaintiff for consultative examination. (AR 526-32.) Plaintiff reported experiencing depression since injuring

his back in 2007, but denied experiencing any suicidal ideation. (AR 527.) Plaintiff acknowledged a history of substance abuse, including methamphetamines and marijuana, and an arrest and conviction history for possession of crystal methamphetamines. (AR 527-28.)

Plaintiff reported that he could take care of his self-dressing, self-bathing, and personal hygiene; could drive, pay bills and handle cash appropriately, and use a computer on a daily basis. (AR 528.) Dr. Ardebili observed that Plaintiff had intellectual functioning in the low average range, depressed mood, and dysphoric affect, but was also oriented, had an above average fund of knowledge, had linear and goal-directed thought processes, had intact insight and judgment, had no impairment in his memory, successfully completed digits forward and backwards, had intact attention and concentration, was able to follow the conversation with the interviewer well, and was able to give a detailed account of his history, current functioning, and activities. (AR 528-29.)

Dr. Ardebili diagnosed Plaintiff as suffering from a mood disorder, not otherwise specified, active cannabis dependence, and methamphetamine dependency and abuse in sustained full remission, and assessed Plaintiff as having a global assessment of functioning (GAF)[2] score of 67, indicating mild symptoms. (AR 531.) Dr. Ardebili opined Plaintiff could understand, remember, and carry out short, simple instructions, could accept instructions from supervisors, interact fairly appropriately with supervisors, coworkers, and peers, and had only mild inability to understand, remember, and carry out detailed instructions. (AR 531.) Dr. Ardebili recommended mental health treatment services for Plaintiff's mood and affective disturbances. (AR 532.)

Dr. Nathan examined Plaintiff again on January 4, 2011. (AR 635-78.) Dr. Nathan noted Plaintiff had received mental health treatment from a Kaiser Permanente physician, Dr. Rowell, since Dr. Nathan's 2009 examination, but had stopped seeing Dr. Rowell in December 2010. (AR 637.) Plaintiff did not exhibit any physical discomfort, was not anxious or depressed, denied suicidal ideation, but exhibited a sad affect. (AR 644; 656.) Plaintiff was able to laugh and smile

---

[2] The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnosis & Statistical Manual of Mental Disorders 32 (4th ed. 2000). The clinician uses a scale of zero to 100 to consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health- illness," not including impairments in functioning due to physical or environmental limitations. *Id.* at 34. A GAF score between 61and 70 indicates mild symptoms symptoms or some difficulty in social, occupational, or school functioning. *Id.*

3

and had no signs of anhedonia. (AR 642.) Plaintiff stated he had improved emotionally since the 2009 examination and got depressed only periodically. (AR 655.) Plaintiff reported having poor concentration and a deterioration in his memory, but did not show any signs of cognitive deficits. (AR 653, 655-56.) When asked about his daily activities, Plaintiff stated he takes his child out to eat, to the park, or to the arcade, gardens around his home, and walks. (AR 643-644).

Dr. Nathan diagnosed relational problems; a depressive disorder, not otherwise specified, history of amphetamine abuse, in full remission; and a GAF score of 60, indicating moderate symptoms. (AR 650; 657.) Dr. Nathan again noted Plaintiff had a tendency to exaggerate his symptomatology, opining that Plaintiff had "exaggerated his symptoms in responding to both the [psychological personality and psychopathology tests], as they were grossly exaggerated and invalid" and "[a]s a result, the totally subjective tests without checks or balances would have to be looked upon with some skepticism." (AR 653.) Dr. Nathan opined Plaintiff had no work restrictions or limitations and there was no reason he could not resume his former work activities. (AR 639; 657.)

In 2011 and 2012, Satnam Atwal, M.D., provided mental health treatment to Plaintiff. (AR 886-907). In April 2011, Dr. Atwal diagnosed Plaintiff with major depressive disorder without psychotic features in partial remission, post-traumatic stress disorder, and assessed Plaintiff as having a GAF score of 50, indicating serious symptoms. (AR 901.) However, with medication, Dr. Atwal reported Plaintiff's symptoms improved. (AR 886-99.) In June 2011, Plaintiff reported he stayed physically active during the daytime and was active socially, he did not feel sad anymore and did not have feelings of hopelessness, and he had a "euthymic," reasonably positive mood. (AR 897.)

In October and November 2011, Dr. Atwal reported Plaintiff was emotionally stable, had a euthymic mood, and exhibited good insight and judgment. (AR 892-93.) Plaintiff reported feeling much better and "happy most of the time," no feelings of hopelessness or worthlessness, an improved relationship with his girlfriend, and an increase in his social and physical activity. (AR 892-93.) Plaintiff denied having sleeping problems, mood swings, racing thoughts, or medication side effects. (AR 892-93.) During subsequent appointments in 2012, Plaintiff reported

4

experiencing difficulty concentrating, but repeatedly affirmed that his medications relieved his depression and stated he felt good, his anger was better controlled, and his energy level was improved. (AR 887-90.)

**C.     Hearing Testimony**

    **1.     Plaintiff's Testimony**

Plaintiff testified at the hearing that he has an 11-year old child who does not live with him, and he lives in a trailer on his girlfriend's property. (AR 33.) Plaintiff has a GED certificate, and completed courses toward an Associate of Arts degree at a junior college. (AR 35.) Plaintiff attends Jehovah's Witnesses meetings once a week. (AR 38.)

Plaintiff worked in roofing, framing, and construction prior to an injury to his back; he continues to be involved in a workers' compensation case appeal over the injury. (AR 34; 39-41.) Plaintiff could previously lift up to 200 pounds. (AR 41.) As a result of the back injury, Plaintiff has muscle spasms and "constant" back pain and fatigue. (AR 41; 54-55; 57.) He experiences some relief from medication and pressing a golf ball against his back, and has successfully experienced relief from injections, chiropractic care, and physical therapy. (AR 41-57.) Plaintiff has treated with a counselor. (AR 50.)

Plaintiff is able to handle his own self-care, do household chores like dusting and folding laundry, and mows the lawn. (AR 36-38; 53-54.) On a typical day, Plaintiff spends time lying down, taking naps, and usually takes a shower in the middle of the day. (AR 38-39.) Plaintiff testified he gets depressed from watching television, his girlfriend helps him manage his finances, and he has difficulty getting along with others but that he was better at being self-controlled on medication. (AR 51-52.)

Plaintiff testified he could not concentrate on reading the newspaper for more than four minutes, that he got depressed in front of large groups of people, that he had suicidal thoughts and cried every day, and that he took medications and tried "to get over it." (AR 60-62.) Plaintiff has difficulty sleeping soundly, and wakes up in the middle of the night intermittently. (AR 62.)

//

//

## 2. Vocational Expert's Testimony

A vocational expert ("VE") testified at the hearing that an individual of Plaintiff's age, education, and work experience, with the RFC to perform light work and sit, stand, and walk for 6 hours, with a sit/stand option, and a restriction to performing simple routine tasks, would not be able to perform Plaintiff's past relevant work as a Carpenter, Dictionary of Occupational Titles ("DOT"), 1991 WL 645964, at 860.381-022, and Carpenter Supervisor, DOT 860.131-018. (AR 63-64.) Work as a Carpenter requires a heavy exertional level and an SVP level of $7^3$, while work as a Carpenter Supervisor requires a medium exertional level and an SVP level of $8^4$. (AR 63-64; DOT 860.381-022; 860.131-018.)

The VE testified that such an individual would be able to perform other work, including the jobs of Cashier II, DOT 211.462-010, with 108,000 jobs in the national economy and 1,200 jobs in the state, Storage Facility Rental clerk, DOT 295.367-026, with 31,000 jobs in the national economy and 5,400 jobs in the state, and Ticket Seller, DOT 211.467-030, with 13,000 jobs in the national economy and 1,400 in the state, all of which require a light exertion level and SVP of $2^5$. (AR 64-65.) When the ALJ asked the VE whether her testimony was consistent with the DOT, the VE responded that her testimony was consistent. (AR 70.)

## C. The ALJ's Decision and Plaintiff's Request for Review

The issue before the Court is very narrow. Plaintiff and the Commissioner agree that the ALJ correctly proceeded through the first four steps of the five-step sequential analysis. (Docs. 13; 14.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 21, 2007, the date on which he alleges he became disabled. (AR 12.) Second, the ALJ found that Plaintiff suffered from lumbar degenerative joint disease and facet arthropathy, polyneuropathy, chronic pain syndrome, and depression, which were all severe impairments.

---

[3] Specific Vocational Preparation ("SVP"), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. An SVP level of 7 would require learning time of over 2 years up to and including 4 years.

[4] An SVP level of 8 would require learning time of over 4 year up to and including 10 years.

[5] An SVP level of 2 would require learning time of "[a]nything beyond short demonstration up to and including 1 month."

6

(AR 12.) Third, the impairments were not severe enough to meet or equal one of the impairments listed in Appendix1, Subpart P of 20 C.F.R. Part 404. (AR 12-13.) Fourth, the ALJ found that Plaintiff did not retain the RFC to perform his past relevant work as a Carpenter and Carpenter Supervisor, which required a medium/skilled exertional level. (AR 20.)

Arriving at the last step of the sequential analysis, the ALJ determined that other jobs existed in significant numbers in the national economy that a person of Plaintiff's RFC could perform. (AR 20.) Based on the testimony of the VE, the ALJ found that "considering the [Plaintiff]'s age, educational background, work experience, and [RFC,]" Plaintiff could perform work as a Cashier II, DOT 211.462-010, Storage Facility Rental clerk, DOT 295.367-026, and Ticket Seller, DOT 211.467-030, which require a light/unskilled exertional level and SVP of 2. (AR 20-21.) Accordingly, the ALJ held that Plaintiff was not disabled. (AR 21.)

Plaintiff requested review by the administrative Appeals Council; when that was denied, he sought judicial review under 42 U.S.C. § 405(g). (Docs. 1, 13, p. 4.) Plaintiff contends the ALJ improperly relied on VE testimony which deviated from the DOT at Step 5. (Doc. 13.)

### III. SCOPE OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld by a district court if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Davis v. Heckler*, 868 F.2d 323, 325 (9th Cir. 1989); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); *Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985) (the findings of the Commissioner as to *any* fact, if supported by substantial evidence, are conclusive.) Substantial evidence is more than a mere scintilla, but less than a preponderance. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial

evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted); *see also Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (the Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion.") The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation omitted).

The role of the Court is *not* to substitute its discretion in the place of the ALJ – "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted); *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."); *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987) (if substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive). The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to

last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In Step 1, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ must determine at Step 2 whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, the ALJ moves to Step 3 and determines whether the claimant has a severe impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments ("Listing"), 20 § 404, Subpart P, App. 1, and is therefore presumptively disabled. *Id.* §§ 404.1520(d), 416.920(d). If not, at Step 4 the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, at Step 5, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

### A. Substantial Evidence Supports the ALJ's Finding that Plaintiff is not Disabled

The ALJ relied on the VE's testimony at the hearing to determine Plaintiff could work as a Cashier II, Storage Facility Rental clerk, or Ticket Seller. (AR 21.) The three jobs require a Reasoning Level of 3. DICOT 211.462-010; 295.367-026; 211.467-030. Plaintiff argues that the VE's testimony impermissibly deviated from the DOT without explanation, because Plaintiff's

limitation to simple, routine tasks is inherently inconsistent with the requirements of Level 3 Reasoning. (Docs. 13; 15.) The Commissioner concedes that the VE's testimony conflicted with the DOT, but contends that any deviation from the DOT was harmless, because Plaintiff's educational background and cognitive abilities support the ALJ's reasonable finding that Plaintiff could perform these unskilled jobs.

### 1. Legal Standard

At Step 5, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. § 416.920(g). The ALJ considers potential occupations that the claimant may be able to perform, given the claimant's assessed RFC, defined as the most that a claimant can do despite "physical and mental limitations" caused by his impairments and related symptoms. 20 C.F.R. § 416.945(a)(1); 20 C.F.R. § 416.966.

In making this determination, the ALJ relies on the DOT, which describes the requirements for each listed occupation, including the necessary General Educational Development ("GED") levels; that is, "aspects of education (formal and informal) . . . required of the worker for satisfactory job performance." DOT, App. C, 1991 WL 688702 (4th ed. 1991). The GED levels include the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most). *See* 20 C.F.R. §§ 416.969, 416.966(d)(1).

In addition to the DOT, the ALJ relies on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his residual functional capacity. 20 C.F.R. § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Finally, to conclude the Step 5 analysis, the ALJ determines "whether, given the claimant's RFC, age, education, and work experience, he actually can find some work in the national economy." *Valentine*, 574 F.3d at 689; *see also* 20 C.F.R. § 416.920(g).

When there is an apparent conflict between the vocational expert's testimony and the DOT, the ALJ is required to reconcile the inconsistency. *Massachi v. Astrue*, 486 F.3d 1149, 1153-54

(9th Cir. 2007). In the Ninth Circuit, "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The ALJ must therefore ask the expert to explain the conflict and "then determine whether the [VE]'s explanation for the conflict is reasonable" before relying on the VE's testimony to reach a disability determination. *Id.*; *see also* SSR 00-4P.

An ALJ may rely on VE testimony that contradicts the DOT only insofar as the record contains persuasive evidence to support the deviation. *See Johnson*, 60 F.3d at 1435; *see also Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001); *Massachi*, 486 F.3d at 1152-53; *Tommasetti*, 533 F.3d at 1042; *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1977). Even if the ALJ errs in failing to reconcile an apparent conflict between the VE's testimony and the DOT, the Court must consider whether the plaintiff's abilities, such as his educational background, demonstrate that he is indeed capable of working, rendering the ALJ's error harmless. *See Zavalin*, 778 F.3d at 847-48.

**2. Analysis**

SSR 00-4p explicitly requires that the ALJ determine whether the expert's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. At the hearing, the VE testified that her testimony was consistent with the DOT. (AR 21; 70.) Though the VE was incorrect and her testimony was actually inconsistent with the DOT, "an ALJ may rely on expert testimony which contradicts the DOT" when "the record contains persuasive evidence to support the deviation." *See Johnson,* 60 F.3d at 1435; *Light*, 119 F.3d at 793. The record here contains sufficiently persuasive evidence to support the ALJ's deviation from the DOT in finding that Plaintiff could perform jobs requiring Level 3 Reasoning despite an assessed limitation to "simple, routine tasks." Further, the ALJ's error in failing to reconcile the VE's testimony with the DOT is harmless, because Plaintiff's abilities, including his educational and vocational background and medical record, demonstrate that he is indeed capable of working.

Plaintiff relies on *Zavalin* for the position that Plaintiff's limitation to simple and routine tasks is inconsistent with the demands of Level 3 Reasoning and the ALJ's reliance on the VE's testimony was therefore reversible error. (Doc. 15 (citing *Zavalin*, 778 F.3d 842).) In *Zavalin*, the

Ninth Circuit compared the definitions of Level 2 and Level 3 Reasoning[6] to determine that "limitation to simple, routine tasks is at odds with Level 3's requirements because it may be difficult for a person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form' as such instructions can be abstract." 778 F.2d at 847 (internal citation omitted). The Court held that "there is no rigid correlation between reasoning levels and the amount of education that a claimant has completed[,]" so that while a claimant's "educational background is relevant, the DOT's reasoning levels clearly correspond to the claimant's *ability* because they assess whether a person can 'apply' increasingly difficult principles of rational thought and 'deal' with increasingly complicated problems." *Id.* (citing DOT, App. C, 1991 WL 688702 (italics in original)); *see also Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (a job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves").

The *Zavalin* Court emphasized that the Commissioner's reliance on the plaintiff's completion of high school as evidence of his level of reasoning ability was belied by his enrollment in special education classes, special accommodations in his regular classes, and his graduating with a "modified diploma." 778 F3.d at 847 (the plaintiff had medical diagnoses of cerebral palsy, a learning disorder, and a speech impairment causing him to speak in a halting manner, and had never held a job). While *Zavalin* is instructive, the facts are distinguishable from the case currently before the Court.

Here, Plaintiff received a GED certificate and attended some college courses toward an Associate of Arts degree at Phillips Junior College from 1991 to 1992. (AR 35; 254; 527.) That level of education, while not dispositive of Plaintiff's reasoning ability, indicates that he has "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above." 20 C.F.R. § 404.1564(b)(4). Unlike the plaintiff in *Zavalin*, Plaintiff neither presented any evidence, nor contended, that he was enrolled in special education classes or

---

[6] Level 2 Reasoning requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." Level 3 Reasoning requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702.

required special accommodations to complete his GED or the college courses he took. (*See* AR 35; 527 (Plaintiff denied any special education courses in his academic history)).

Further, Plaintiff has performed skilled work in the past. (AR 63-64.) Plaintiff's past relevant work as a Carpenter and Carpentry Supervisor both require Level 4 Reasoning, which requires a worker to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists" and "[i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *See* DICOT 860.381-022; 860.131-018; DOT, App. C, 1991 WL 688702. Unlike the plaintiff in *Zavalin*, Plaintiff has past relevant work which was performed at a higher Reasoning Level than the jobs identified by the ALJ in its decision.

Finally, there is no medical evidence in the record supporting a conclusion that Plaintiff has diminished cognitive or reasoning ability that would preclude him from performing work at the same reasoning level as his prior relevant work. (*See* AR 15-17; 528-29; 653; 655-56.) In December of 2010, Consultative Examiner Dr. Ardebili noted that Plaintiff's "memory is unimpaired for remote and immediate memory," his "attention and concentration are intact," his "thought processes were linear and goal-directed[,]" his "insight and judgment appear to be intact," and his speech was fluent and coherent. (AR 529-30.) Opining Plaintiff's "cognitive ability falls within the low average range" and he has a "mild inability to understand, remember and carry out detailed instructions[,]" Dr. Ardebili concluded that Plaintiff has "the ability to understand, remember and carry out short, simple instructions." (AR 531.) Further, state agency physician M. Dilger opined that Plaintiff "would only have mild limitations in carrying out detailed tasks." (AR 542.) While the ALJ assessed Plaintiff's RFC as being limited to carrying out "simple, routine tasks," unlike in *Zavalin*, the medical evidence does not establish that Plaintiff is *unable* to work in occupations requiring Level 3 Reasoning.

Plaintiff does not argue, and nowhere in the record is there any medical evidence indicating that Plaintiff's severe mental impairment of depression would prevent him from being able to carry out the duties in the job descriptions of the three occupations identified by the ALJ. A Level 3 Reasoning score requires that the claimant be able to "apply commonsense

13

understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "deal with problems involving several concrete variables in or from standardized situations." DOT App. C, 1991 WL 688702.  Plaintiff does not argue that he cannot perform these skills, and his educational background, employment experience at a higher reasoning level, and cognitive abilities appear to match the requirements of Level 3 Reasoning.  *See Hillier v. Social Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) (evaluating plaintiff's past work experience and holding that "[i]n the abstract, tension exists between only being able to understand, remember, and follow simple, concrete instructions and working as a cashier.  We, however, do not decide cases in the abstract.").

Substantial evidence exists within the record to support the ALJ's reliance on the VE's testimony that Plaintiff is able to work as a Cashier II, Storage Facility Rental clerk, and Ticket Seller – occupations requiring Level 3 Reasoning – despite his assessed RFC limiting him to "simple, routine tasks."  *See Johnson*, 60 F.3d at 1435; *see also Zavalin*, 778 F.3d at 847-48.  Any error in the ALJ's failure to reconcile the apparent conflict between the VE's testimony and the DOT is therefore harmless, and the ALJ's decision must be affirmed.

### VI.   CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff Roberto Muniz Vasquez.

IT IS SO ORDERED.

Dated:   **July 21, 2015**                           **/s/ Sheila K. Oberto**
                                            UNITED STATES MAGISTRATE JUDGE